Cabuthers, J.,
delivered the opinion of the court.
This is an action on a hill of exchange for $3000, drawn by H. B. Warner & Co., of St. Louis, upon White, Balridge & Co., of New Orleans, payable to the order of Sterling Fowlkes & Co., who endorsed the same to B. W. Thomason, and he to Jeptha Fowlkes, and the latter to the plaintiff. The suit is against all the endorsers, namely: Sterling, Austin and Jeptha Fowlkes and B. W. Thomason. The bill was protested for non-payment by the acceptors on the day of maturity by a notary of New Orleans, and the notices to the endorsers properly given.
The only material question made in the case is, upon the charge of the court in relation to the protest. His Honor, charged it to be insufficient to fix the liability of the endorsers, and they were discharged by the verdict. The excuse for failure to demand is thus stated in the protest. “At the request of New Orleans „ Canal and Banking Company, holder of the original draft, whereof a true copy,” &c. “I, Theodore Guigal, notary public in New Orleans,” &c., “duly commissioned, and sworn, by my deputy, W. 0. La-tham, went several times to the office of the acceptors of said draft, to demand payment thereof, but found no one in or about the premises of whom the demand could be made, whereupon the said notary did protest,” &c.
This is a foreign bill of exchange, having been drawn and accepted in different States.
It is well settled in the commercial law, that in such a case the protest must show, intrinsically, all the *557 facts necessary by the rules of law, to charge the drawer and endorsers — it can receive no extrinsic aid. Whether the protest be for non-payment upon presentation and demand, or because a sufficient legal excuse existed for failure to demand, the necessary facts must appear in the record of .his official action, or the parties who are secondarily and conditionally liable, are discharged.
This case stands upon »the sufficiency of the reasons for the failure to make any demand, and there is no other question.
On the proper day he “went several times to the office of the acceptors, and found no one in or about the premises of whom the demand could be made.” Is this, without more, a sufficient reason and excuse in law, to dispense with actual demand? Was any more diligence required of him? The office or place of business of the acceptors, if they have one,, was certainly the-right .place to go, where no particular place is designated in the bill or acceptance. In such a case, personal demand would be good any where the acceptors might be found. If any additional diligence is required by the law, the protest is a nullity. In bills at large, that is, such as are payable at no specified place, if the acceptor has changed his residence or place of business at the maturity of the bill, it must appear in the protest that reasonable diligence was used by the notaiy to ascertain where he is, or whether he has absconded, secretes himself, or has removed, or absented himself from the State. If upon sufficient inquiry at the proper place, such is ascertained to be the fact, and the same with the diligence used be stated in the *558 protest, it will be good in excuse of demand. But if in such case be knows, or by reasonable diligence can ascertain that tbe acceptor resides at some other place in tbe same State, having changed bis residence before maturity, the demand must be made there, and not at his former residence, provided such fact is, or could have been reasonably known, in sufficient time before maturity. The diligence required constitutes an essential ingredient in- the excuse for failure to make actual demand, and must be shown in the protest in the case of foreign bills. It is otherwise as to the mode of proof only in cases of inland bills and promissory notes. In these, extrinsic evidence is allowed. The line between sufficient and insufficient diligence, and what must be stated and what will be presumed, is sometimes almost invisible, and as to its location, the cases conflict. The cases of Gardner vs. The Bank of Tennessee, 1 Swan, 420, and Carter vs. The Union Bank, 7 Humph., 548, settle many of these questions, as to which it is useless to go into authorities now. In the case under consideration, his Honor charged the jury, that this protest was insufficient to fix the liability of the endorsers, because in addition to what the notary states was done by him, it was necessary to show, that upon finding no one in the office of the acceptors “ he made inquiry to ascertain where they were.” Less than this, he held, would not satisfy the rule requiring due diligence of the holder, or his agent, the notary to excuse demand.
This was the vital point in the case, and upon it we think his Honor erred. There could be no necessity for such an enquiry, because he was then at the *559 proper place to find the acceptors, their office or place of business, where it was their duty to be or have provision made, to meet their acceptance. True, that particular place is not named in the bill, but where no place is named, but only the town or city, the law fixes the residence or place of business, or either, as the proper one for demand; and where the acceptor has such place of business or dwelling, that is the place to go, and if he be not there in business hours, or have an agent there to comply with his engagements, the bill is dishonored, without any thing further on the part of the holder or notary. His .absence is sufficient excuse for demand in such a case, without more. If the place of business be closed or discontinued, what diligence must be used, if any, to find the acceptor or his dwelling, or to ascertain that he has none, or is not himself in the city, is not a question in the case, and need not be considered.
The cause of confusion and seeming inconsistency in the authorities on this subject, arises from a want of discrimination between the different character of cases. All the rules in this branch of the law, though they may seem to be arbitrary, are founded on reason and good sense. A few cases will illustrate the truth of this position.
A bill drawn on a resident of a particular town or city, must be demanded there at his residence or place of business, if he have any, or personally, but if he has no such place, or is absent, then demand is excused. But if a bank, or any other particular place in the city be specified as the place of payment, the demand must be there, and if that place is closed, or *560 no one can be found there, the protest may be made without demand or further inquiry. But if no city or house be designated, this is a bill at large, and if the party cannot be found at his usual place of residence or business, and the same be closed or discontinued, further inquiry is necessary to ascertain whether he has abandoned or left the State, which will excuse demand, or removed to some other place in the same State, and in which case, if his new location could have been by reasonable diligence ascertained in sufficient time, the demand must be made there.
But the case under consideration is a foreign bill, drawn upon and accepted by a .firm in blew Orleans. It is payable in the city, but at no specified house or place. The contract then failing to do so, the law fixes the place for the application for payment, which is the residence or place of business, and if either of them to which the notary may go be abandoned, further inquiry must be made and set forth in the protest, or it is bad; but if open and not in fact discontinued, and no one is to be found of whom to make demand, the same is excused without further diligence. This last is the present case. The authorities, then, which refer to cases of bills at large, or not at large, and the place of business or residence is discontinued or abandoned, do not apply to the case before us, as there was here a place of business, and that not discontinued as the protest must be construed.
The array of authorities in the argument upon the question of the necessity of showing in the protest that the notary made presentation, as well as demand, are inapplicable to this case, ■ because they relate to cases *561 where demand is made, and not to those where it is excused. It would therefore, he superfluous labor here, to go into the examination of the questions so much argued, as to the authority of the court or jury, to presume a presentation from the demand, or the indis-pensibility of stating both in the protest. All the learning and jarring authorities on this subject, may therefore be passed by without examination, until such a case is presented. It would certainly be very idle and useless to state that the bill was presented, when no one was found to whom the presentation could be made. The two statements in the same protest would certainly be very incongruous. The occasion did not arise for the notary to say any thing' about having the bill present with him, or exhibiting it to the drawer; that would only become appropriate if he had found some one of whom payment could be demanded. Then, and not till then, could the question of the sufficiency of the statement of those facts in the protest come legitimately under discussion. The law does not require vain things to be done or stated.
Upon the whole, we regard the protest in this case as sufficient in all respects to charge the endorsers, without the aid of any extrinsic evidence, which, as we have seen, would be inadmissible for the plaintiff, but competent for the defendants to disprove the facts stated in excuse of presentation and demand. The truth of the facts stated, or case made out in the protest, is always open to the defendants to disprove — it is ex ¡parte and only prima faeie evidence.
The judgment will be reversed and the cause remanded for a new trial.